OLA M. BARTLETT *v.* RAYMOND T. WISE AND ALMA R. WISE, HUSBAND AND WIFE AND CECIL WHITELY.

[No. 2-674A135. Filed May 10, 1976.]

*Davis S. Walker,* Legal Services Organization of Indianapolis, *Russell E. Lovell, II,* of Indianapolis, for appellant.

*Edwin H. Hughes, III, Hughes & Hughes,* of Indianapolis, for appellees.

SULLIVAN, J.—This case involves a conditional real estate sales contract. Ola M. Bartlett (Purchaser) entered into the contract with Wise and Whitely (Sellers) on September 12, 1961. It called for a total purchase price of $9,750.00, together with interest computed semi-annually upon the unpaid balance at 6½% per year. Purchaser's monthly payment obligation, including principle, interest and taxes, was $85.00. The contract contained a standardized "liquidated damage" forfeiture provision as follows:

"That if any taxes, assessment or insurance premium be not paid when due, or if any installment of the purchase price or interest thereon, shall become delinquent for a period of 30 days, or if the buyer shall fail to observe or perform any other conditions or terms of this agreement, the seller may at his option cancel this agreement, take immediate possession of said real estate and remove the buyer or any other person therefrom without any notice or demand whatsoever, the necessity therefor being hereby expressly waived; and in the event of such cancellation, all payments theretofore made by the buyer shall be retained by the seller not as a penalty, but as liquidated damages for the breach of this agreement and in such event all rights and demands of the buyer shall cease and terminate and the buyer shall have no further right, title, interest or claim of any kind or character in or to the real estate described herein, or the legal or equitable title thereto or any of the benefits provided under the terms of this agreement. Failure or delay of the seller to exercise any option hereunder at the time of any default shall not operate as a

waiver of the right of the seller to exercise such option for the same or any subsequent default at any time thereafter."

On September 12, 1961, Purchaser paid $500.00 toward the purchase price and took possession of the premises on October 12, 1961. Beginning October, 1961, she made the required $85.00 monthly payments each month to and including July, 1971.

In April, 1971, Purchaser suffered a stroke and became hospitalized. During the period of Purchaser's hospitalization or while she resided in a nursing home, a fire occurred causing substantial damage to the premises in question. The damage was repaired through funds paid pursuant to the insurance policy carried by Purchaser. The repairs were completed and the premises became again habitable on or about August 5, 1971. Purchaser, however, never moved back into the premises and was admittedly in default 30 days after failing to make the payment due August 12, 1971. In September, 1971, there was some conversation between Purchaser and Sellers concerning Purchaser's intentions concerning the premises. Purchaser, then age 68, advised that she was unable to make further payments and did not intend to live in the premises. Sellers took no formal action to retake possession nor did they seek specific performance. On April 25, 1972, however, the *Purchaser* instituted suit. The complaint sought specific performance, together with $5,000.00 in punitive damages for an alleged anticipatory breach by Sellers, or in the alternative, that the conditional sales contract be rescinded and cancelled and Purchaser be awarded judgment in the sum of $14,118.50 (presumably the amount paid on the contract including interest and taxes plus the value of improvements allegedly made in 1965 to the real estate by Purchaser). In a second paragraph, Purchaser asked that the forfeiture clause of the contract be declared unconscionable, unenforceable, and void, with judgment in the amount of $14,118.50, less actual damages established by Sellers. There-

after, Sellers filed their answer, the second paragraph of which was a counter-claim in which Sellers sought judgment for possession of the real estate and cancellation of the conditional sales contract.

In awarding judgment on December 13, 1973 to the contract Sellers, the trial court cancelled the contract and ordered all prior contract payments retained by the Sellers as liquidated damages. The court found the balance due under the contract as of October 1, 1973 to be $7,953.73. The original contract price as heretofore noted was $9,750.00. Of the $10,530.00 paid by Purchaser over a ten year period, $5,211.50 represented interest; $2,092.02 real estate taxes; and $3,226.48 was applied against the original principal contract balance. Thus, at the time of Purchaser's last contract payment in July, 1971, the unpaid principal balance due on the contract was $6,523.52.

The $7,953.73 balance found due at the time of judgment consists of:

$6,523.52—balance due after the July, 1971 payment
   552.15—interest accrued to 10/1/73
   378.06—taxes payable in May and Nov., 1972 and
            May, 1973 paid by Sellers
   500.00—reasonable attorney fees

$7,953.73

Purchaser's threshold argument constitutes an attack upon the "liquidated damage "forfeiture provision of the contract. She asserts that the provision is unconscionable and that the judgment which permitted Sellers to retain all prior installment payments effected a harsh forfeiture in that such amount exceeded Sellers' actual damages.

By reason of our holding as to this issue, we need not treat other assertions of error made by Purchaser.

It is to be noted that trial of this cause was conducted to the court without jury prior to October 4, 1973, the date upon which our Supreme Court decided *Skendzel* v. *Marshall* (1973), 261 Ind. 226, 301 N.E.2d 641, *cert. den.* 415 U.S.

921. The judgment here was entered, however, in December, 1973 and the *Skendzel* decision was cited by Purchaser in the memorandum accompanying her Motion to Correct Errors.

In *Skendzel,* our Supreme Court held:

"Guided by the above principles, we are compelled to conclude that judicial foreclosure of a land sale contract is in consonance with the notions of equity developed in American jurisprudence. A forefeiture—like a strict foreclosure at common law—is often offensive to our concepts of Justice and inimical to the principles of equity. This is not to suggest that a forefeiture is an inappropriate remedy for the breach of all land contracts. In the case of an abandoning, absconding vendee, forfeiture is a logical and equitable remedy. Forfeiture would also be appropriate where the vendee has paid a minimal amount on the contract at the time of default and seeks to retain possession while the vendor is paying taxes, insurance, and other upkeep in order to preserve the premises. Of course, in this latter situation, the vendee will have acquired very little, if any, equity in the property. However, a court of equity must always approach forfeitures with great caution, being forever aware of the possibility of inequitable dispossession of property and exorbitant monetary loss. We are persuaded that forfeiture may only be appropriate under circumstances in which it is found to be consonant with notions of fairness and justice under the law." 261 Ind. at 240-41; 301 N.E.2d at 650.

We believe it inappropriate to consider purchaser here as an "abandoning, absconding vendee" so as to subject her to the harshness of the forfeiture provisions of the contract. This is particularly true in light of the fact that she had paid one-third of the principal amount due on the contract—certainly more than a "minimal amount".

We thus hold that under these circumstances forfeiture as decreed by the court below is not "consonant with notions of fairness and justice under the law".

Accordingly, the judgment is reversed and the cause remanded for further proceedings consistent with the order of remand in *Skendzel* v. *Marshall, supra.*

Buchanan, P.J., and White, J., concur.

NOTE.—Reported at 348 N.E.2d 562.